UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RASHID CONTEH,<br><br>Plaintiff,<br><br>v.<br><br>CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security, et al.,<br><br>Defendants. | Civil Action No. 20-cv-10736-ADB |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STRIKE

BURROUGHS, D.J.

On April 14, 2020, Plaintiff Rashid Conteh filed a complaint against Chad Wolf, Acting Secretary of the U.S. Department of Homeland Security ("DHS"); Matthew T. Albence, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, Acting Field Office Director of ICE's Boston Field Office; Michael Richard Pompeo, U.S. Secretary of State; Maria E. Brewer, U.S. Ambassador to Sierra Leone; and William P. Barr, U.S. Attorney General (collectively, "Defendants"), alleging that Defendants' refusal to facilitate his return to the United States from Sierra Leone for immigration proceedings violates the Fifth Amendment of the U.S. Constitution and various federal statutes. [ECF No. 1 ("Compl.")].

Currently before the Court are Defendants' motion to dismiss, [ECF No. 13], and Conteh's motion to strike certain portions of Defendants' memorandum in support of their motion to dismiss and accompanying declaration, [ECF No. 18]. For the reasons set forth below, Defendants' motion, [ECF No. 13], is GRANTED and Conteh's motion, [ECF No. 18], is DENIED.

**I.     BACKGROUND**

    **A.     Factual Background**

For purposes of this motion, the relevant facts are drawn from the complaint, [Compl.], and viewed in the light most favorable to Conteh. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Conteh is a citizen and national of Sierra Leone. [Compl. ¶ 9]. On September 13, 2000, Conteh was admitted to the United States as a refugee. [Id. ¶ 10]. Subsequently, Conteh applied to adjust his status to lawful permanent resident but his application was denied on May 22, 2004. [Id. ¶ 11]. On February 25, 2009, the Government began removal proceedings against Conteh. [Id. ¶ 12]. Conteh again applied to adjust his immigration status and, on June 19, 2009, Immigration Judge ("IJ") Eliza Klein of the Boston Immigration Court ("BIC") granted his application. [Id. ¶ 13]. DHS appealed IJ Klein's decision and the Board of Immigration Appeals ("BIA") remanded the case for a determination regarding whether Conteh was a "violent or dangerous individual." [Id. ¶ 14]. Such a finding would have required him to demonstrate "exceptional and extremely unusual hardship" to obtain an adjustment of status. [Id.].

Following the remand, Conteh had an immigration hearing on November 16, 2009. [Compl. ¶ 15]. Representing himself at this proceeding, Conteh withdrew his application for adjustment of status upon the advice of his criminal attorney, who had advised Conteh that a pending criminal case for possession with intent to distribute marijuana disqualified him from becoming a lawful permanent resident. [Id.]. Because Conteh withdrew his application for an adjustment of status and then offered no other arguments in opposition to his removal, IJ Klein ordered Conteh removed. [Id. ¶ 16]. Conteh did not appeal and the removal order became final the same day. [Id.].

Although Conteh was ordered removed in November 2009, ICE did not deport him to Sierra Leone until April 2017. [Compl. ¶ 18]. In May 2017, now represented by counsel, Conteh filed a motion in the BIC to reopen his immigration proceedings. [Id. ¶ 19]. In support, Conteh, relying on a Supreme Court case, Moncrieffe v. Holder, 569 U.S. 184 (2013), argued that his removal had been ordered based on a legal error concerning what constitutes an aggravated felony under the Immigration and Nationality Act (the "INA"). [Compl. ¶ 19]. IJ Maureen O'Sullivan granted Conteh's motion and reopened his removal proceedings, which allowed Conteh to apply for an adjustment of status for the third time. [Id. ¶ 20].

At the next BIC master calendar hearing on August 29, 2018, Conteh's counsel requested that the IJ order ICE to facilitate Conteh's return to the United States so that he could be physically present at his next hearing. [Compl. ¶ 21]. The IJ denied the request but continued the proceedings until November 20, 2019 to give Conteh time to try to get back to the United States for the hearing. [Id. ¶¶ 21–22].

In April, May, and October 2019, Conteh's counsel contacted ICE by email and mail, requesting that ICE return Conteh to the United States, but ICE provided no substantive response. [Compl. ¶¶ 23–28]. He also attempted to contact the U.S. Attorney's Office for the District of Massachusetts regarding Conteh's return but likewise received no substantive response. [Id. ¶¶ 31–35].

At the November 20, 2019 master calendar hearing in the BIC, Conteh did not appear either in person or via videoconference. [Compl. ¶ 36]. Instead, Conteh's counsel requested that the IJ issue a subpoena for Conteh's return. [Id.]. IJ O'Sullivan denied the motion for a subpoena but granted a year-long continuance to allow Conteh to seek ICE's help in securing his

return.  [Id.].  Conteh currently has a hearing before the BIC scheduled for November 20, 2020. [Id.].

In advance of this hearing, ICE has not contacted Conteh or his counsel to discuss facilitating his return to the United States or his participation in his removal proceedings via videoconference.  [Compl. ¶¶ 39–40].

### B. Procedural Background

On April 14, 2020, Conteh filed his four-count complaint against Defendants, seeking declaratory and injunctive relief.  [Compl.].  In Count 1, he alleges that he is entitled to a writ of mandamus pursuant to 28 U.S.C. § 1361 because he has a right to return to the United States, Defendants have a clear, non-discretionary duty to facilitate his return, and no alternative adequate remedies are available to him.  [Id. ¶¶ 43–51].  In Count 2, he asserts that Defendants' refusal to return him to the United States violates the INA because, in his view, his right to reopen his removal proceedings under the INA is meaningless if he is unable to attend his reopened proceedings in person.  [Id. ¶¶ 52–59].  In Count 3, he claims that he is entitled to relief under the Administrative Procedure Act (the "APA") because he is entitled to return to the United States and Defendants have unlawfully withheld agency action (i.e., facilitating his return).  [Id. ¶¶ 60–67].  Finally, in Count 4, he alleges that Defendants have violated the Due Process Clause of the Fifth Amendment because a person who is not physically present at removal proceedings is substantially hindered in his ability to oppose the removal.  [Id. ¶¶ 68–73].  For relief, Conteh asks the Court to declare Defendants' refusal to return him to the United States unlawful and to order Defendants to immediately facilitate his return.  [Id. at 20].

On August 26, 2020, Defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  [ECF No. 13].  On September 9, 2020, Conteh

4

simultaneously opposed Defendants' motion, [ECF No. 20], and moved to strike certain statements in Defendants' memorandum and declaration in support of their motion, [ECF No. 18]. On September 22, 2020, Defendants filed a reply, [ECF No. 24], and an opposition to Conteh's motion to strike, [ECF No. 23].

## II. LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). The Court "appl[ies] a standard of review 'similar to that accorded to a dismissal for failure to state a claim' under subsection 12(b)(6)." Rodriguez v. Mass. Parole Bd., No. 16-cv-11113, 2017 U.S. Dist. LEXIS 24705, at *6 (D. Mass. Feb. 22, 2017) (quoting Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012)). The Court must "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to [Plaintiff's] cause." Royal v. Leading Edge Prods., 833 F.2d 1, 1 (1st Cir. 1987). "Dismissal can be justified only if it clearly appears that no colorable hook exists upon which subject matter jurisdiction can be hung." Id. Still, "a plaintiff who seeks to bring her suit in a federal forum bears the burden of establishing that the federal court has subject-matter jurisdiction," Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64 (1st Cir. 2018), and "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety," Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

### III.     DISCUSSION

Defendants argue that because the Court lacks subject matter jurisdiction, the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]  According to Defendants, Congress has stripped the district courts of jurisdiction to adjudicate matters arising from the decision to commence removal proceedings or execute removal orders against aliens, leaving subject matter jurisdiction over questions of law and fact that arise from an action taken to remove an individual from the United States to the courts of appeals.  [ECF No. 14 at 11–14].  Defendants maintain that because Conteh's claims relate to the execution of his removal order in 2017 and the subsequently reopened removal proceedings, the Court lacks jurisdiction.  [Id. at 14–15].  Finally, they argue that neither 28 U.S.C. § 1361 nor the APA provides the Court with jurisdiction because § 1361 applies only where the duty to be performed is ministerial and the duty to perform it is clear, and the APA does not itself create jurisdiction but rather prescribes the standards pursuant to which courts review agency actions when there is jurisdiction.  [Id. at 16–22].

In response, Conteh maintains that Defendants' arguments and the cases they cite are inapposite because he was unlawfully removed.  [ECF No. 20 at 1–2].  More specifically, Conteh maintains that because his order of removal resulted from his marijuana-related Virginia conviction and the Supreme Court subsequently held in Moncrieff that convictions like Conteh's are not aggravated felonies, his order of removal was unlawful and void.  [Id. at 2–3].  Accordingly, Conteh asserts, he should be treated "exactly the same as someone with the same

---

[1] Defendants also seek to dismiss the complaint on its merits pursuant to Federal Rule of Civil Procedure 12(b)(6) and make various arguments regarding Conteh's failure to state a claim in their briefs.  See generally [ECF Nos. 14, 24].  Because, as noted below, the Court finds that it lacks subject matter jurisdiction, the Court will not reach these arguments.

immigration and criminal history who was not actually removed" and that person "would be allowed to litigate his removal proceedings within the United States." [Id. at 7–8].

In their reply, Defendants point out that Conteh's claim about the unlawfulness of his removal is logically flawed because his removal order was entered in 2009, *before* the marijuana conviction occurred in 2011 and, therefore, Conteh's removal could not have been premised on that conviction. [ECF No. 24 at 2–3].

### A.   Subject Matter Jurisdiction

The INA has two relevant jurisdiction-channeling provisions.  First, the section titled "Exclusive means of review" states that,

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).  For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5).  Second, the section titled "Consolidation of questions for judicial review" provides that

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Id. § 1252(b)(9).

The question before the Court is whether Conteh is seeking judicial review of "questions of law and fact" "arising from any action taken or proceeding brought to remove [him]." 8 U.S.C. § 1252(b)(9). If so, then Conteh's sole avenue for relief is a petition for review with the appropriate court of appeals and this Court must dismiss his complaint for lack of subject matter jurisdiction.

Section 1252(b)(9)'s "expanse is breathtaking." Aguilar v. U.S. ICE, 510 F.3d 1, 9 (1st Cir. 2007). On its face, it "encompasses all questions of law and fact and extends to both constitutional and statutory challenges." Id. (internal quotation marks omitted). The provision "was designed to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." Id. (emphasis omitted). "In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings." Id.

Still, § 1252(b)(9)'s jurisdictional bar is not without bounds. The Supreme Court explored its limits in two recent cases.

In Jennings v. Rodriguez, a putative class of aliens who had been detained for more than six months, without bond hearings, during immigration proceedings, asserted claims challenging the government's statutory and constitutional authority for continuing to detain them. 138 S. Ct. 830 (2018). Six of eight justices agreed that the district court had jurisdiction over the respondents' claims;[2] however, the court declined to "provide a comprehensive interpretation" of § 1252(b)(9). Id. at 841 (plurality opinion). In the plurality opinion, Justice Alito explained that

---

[2] Justice Kagan took no part in the decision of the case.

the district court had jurisdiction because the respondents were "not asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined." Id. Justice Alito cautioned against an overexpansive reading of § 1252(b)(9), noting that interpreting "arising from" in an "extreme way" could lead to "results that 'no sensible person could have intended.'" Id. at 840 (quoting Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016)); see also id. (listing illustrative examples of "staggering results" that could follow if "arising from" were read too broadly, including lack of jurisdiction over (1) a detained alien's claim for inhumane conditions of confinement, (2) a detained alien's state-law claim against a guard for assault, or (3) an alien's personal injury claim related to a car accident that occurred on the way to a detention center). As further justification for imposing limits on § 1252(b)(9)'s scope, Justice Alito noted that interpreting it too broadly would "make claims of prolonged detention effectively unreviewable" because "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." Id. In dissent, Justice Breyer, writing for Justices Ginsburg and Sotomayor, agreed that § 1252(b)(9) provided no jurisdictional bar, but took it a step further, reasoning that § 1252(b)(9) applied only "with respect to review of an order of removal." Id. at 876 (Breyer, J., dissenting) (alteration omitted) (quoting 8 U.S.C. § 1252(b)). Although he concurred in the judgment, Justice Thomas, joined by Justice Gorsuch, concluded that the district court lacked jurisdiction because detention is an action taken to remove an alien and, therefore, questions regarding detention "arise from" an action taken to remove an alien. Id. at 855 (Thomas, J., concurring).

The next year, in Nielsen v. Preap, 139 S. Ct. 954 (2019), which also concerned detention without a bond hearing, Justice Alito, joined by Chief Justice Roberts and Justice Kavanaugh,

concluded that because the respondents were not seeking review of a removal order, challenging a detainment decision, or challenging part of the process by which their removability would be determined, § 1252(b)(9) was not a jurisdictional bar. Id. at 962. This time around, Justice Breyer, whose dissent was joined by Justices Ginsburg, Sotomayor, and Kagan, did not specifically address jurisdiction under § 1252(b)(9) but implicitly concluded that the court had jurisdiction by reaching the merits of the case. See generally id. at 976–85 (Breyer, J., dissenting). Justice Thomas, joined by Justice Gorsuch, reiterated his stance that "no court has jurisdiction to decide questions concerning detention of aliens before final orders of removal have been entered." Id. at 973 (Thomas, J., concurring).

Thus, although the Supreme Court has not provided a bright-line rule regarding the distinction between claims that are subject to § 1252(b)(9)'s jurisdictional bar and claims that are not, it has provided useful, albeit general, guidance. Justice Alito's framework is particularly instructive. In concluding that the claims in Jennings were *not* subject to § 1252(b)(9)'s jurisdictional bar, he seems to have set forth three categories of claims that *are*: (1) cases where an alien is seeking review of an order of removal; (2) cases where an alien is seeking review of the government's decision to detain him or seek removal; and (3) cases where an alien is seeking to challenge "any part of the process by which [the alien's] removability will be determined." 138 S. Ct. at 841 (plurality opinion); see also Nielsen, 139 S. Ct. 962 ("As in Jennings, respondents here are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, we held in Jennings, § 1252(b)(9) does not present a jurisdictional bar." (alteration in original) (internal citations and quotation

10

marks omitted)); Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1907 (2020) ("As we have said before, § 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" (alteration in original) (quoting Jennings, 138 S. Ct. at 841 (plurality opinion))); Nasrallah v. Barr, 140 S. Ct. 1683, 1690 (2020) ("[A] noncitizen's various challenges arising from the removal proceeding must be consolidated in a petition for review and considered by the courts of appeals. [C]onsolidating the issues arising from a final order of removal, eliminating review in the district courts, and supplying direct review in the courts of appeals . . . expedites judicial review of final orders of removal." (internal citations and quotation marks omitted)).

Under Justice Alito's analytical framework, which a majority of the Justices seem to have endorsed in Regents, see Regents, 140 S. Ct. at 1907, Conteh's claims appear to fit squarely into the third category of cases that are subject to § 1252(b)(9)'s jurisdictional bar. Conteh seeks to challenge the "process by which [his] removability will be determined," Jennings, 138 S. Ct. at 841, specifically, the permissibility of being forced to advocate against his removal via videoconference rather than in person, see generally [Compl.].

Other aspects of Justice Alito's plurality opinion in Jennings also support the conclusion that this Court lacks jurisdiction to consider Conteh's claims. Justice Alito was cautious about an overly broad interpretation of § 1252(b)(9) fearing that it could result in an alien never being able to bring his or her claim. This concern is not implicated here. Unlike the aliens in Jennings, Conteh will not be deprived of the opportunity for judicial review regarding his claim. After his removal hearing, if he is ordered removed, he can challenge the validity of the final order of removal and raise his arguments in a petition for review in the appropriate court of appeals. See

Aguilar, 510 F.3d at 14 ("The petitioners unquestionably have the right, under the INA, to raise these claims before the immigration judge, before the Board of Immigration Appeals (BIA), and ultimately before the court of appeals."). Thus, Conteh's claim is not of the now or never variety that appears to have fueled Justice Alito's apprehension. Rather than involving claims that are truly collateral to the removal decision (e.g., a car accident, an assault claim), see Jennings, 138 S. Ct. at 840, here Conteh is attacking the very heart of the procedure by which his removability will be determined.

Concluding that the Court lacks subject matter jurisdiction is also consistent with First Circuit case law. For instance, in Aguilar, certain of the aliens' claims were based on an alleged deprivation of their right to counsel in connection with removal proceedings. 510 F.3d at 13. There, the First Circuit held that § 1252(b)(9) precluded the district court's review of the right-to-counsel claims because "[b]y any realistic measure, the alien's right to counsel is part and parcel of the removal proceeding itself" and "allowing aliens to ignore the channeling provisions of section 1252(b)(9) and bring right-to-counsel claims directly in the district court would result in precisely the type of fragmented litigation that Congress sought to forbid." Id. at 13–14. More generally, the First Circuit stated that it would "read the words 'arising from' in section 1252(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process." Id. at 11; see also Cano-Saldarriaga v. Holder, 729 F.3d 25, 27 (1st Cir. 2013) ("The [INA] authorizes federal courts to review only final order[s] of removal issued by the BIA. . . . A final order is not limited to a determination of removability, but includes all matters on which the validity of the final order is contingent." (second alteration in original) (internal citations and quotation marks omitted)). Here, Conteh's claim cannot be said to be "independent of" or "collateral to" his removal proceeding. In fact, one of his primary arguments is that Defendants'

refusal to return him to the United States has "interfered with his ability to consult with his attorneys and prepare for his upcoming removal hearings," [Compl. ¶ 59], which is the type of right-to-counsel claim that the First Circuit expressly held fell within § 1252(b)(9)'s reach.

Recent out-of-circuit cases support the same conclusion. See, e.g., E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec., 950 F.3d 177, 188 (3d Cir. 2020) (holding that § 1252(b)(9) barred claim related to statutory right to counsel because it was "tied to the removal proceedings themselves" and the "court of appeals can redress any deprivation of counsel in the removal proceedings before the alien is removed"); P.L. v. U.S. ICE, No. 19-cv-01336, 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019) (holding that § 1252(b)(9) precluded consideration of the plaintiffs' challenge to the government's policy of requiring them to appear for removal proceedings through videoconference because "[h]ow immigrants appear for removal proceedings constitutes part of the process of these proceedings").

Additionally, as Defendants note, there is a recent, materially indistinguishable case in which a district court dismissed a plaintiff's complaint for lack of subject matter jurisdiction, which—although not binding on this court—is instructive. [ECF No. 14 at 15–16]. In Anaya Murcia v. Godfrey, an alien who had been lawfully removed from the United States brought an action to obtain a court order requiring the Government to facilitate his return to the United States so that he could participate in his reopened removal proceedings. No. 19-cv-00587, 2019 WL 5597883 (W.D. Wash. Oct. 10, 2019), report and recommendation adopted, 2019 WL 5589612 (W.D. Wash. Oct. 30, 2019).[3] The plaintiff alleged violations of the INA, the APA, the Due Process Clause, the Mandamus Act, and the All Writs Act, and sought declaratory and

---

[3] The case is currently on appeal before the Ninth Circuit but the parties are mediating the claims and have not yet filed their briefs. See generally Anaya Murcia v. Godfrey, No. 19-35913 (9th Cir. 2019).

injunctive relief. Id. at *2. The court concluded that the INA's jurisdiction-channeling provisions stripped the district court of jurisdiction because the plaintiff's claims arose from his pending removal proceedings. Id. at *5. More specifically, the court concluded that the complaint raised the following legal questions, which were all tied directly to the plaintiff's pending removal proceedings:

- If a person who has been lawfully removed prevails on a motion to reopen, is he or she entitled to be returned to the United States to participate in the reopened removal proceedings? In other words, does the right to file a motion to reopen and continue to seek relief from abroad include the right to be present at reopened removal proceedings?
- Is there a statutory right to be present at one's own removal proceedings?
- Do the INA's statutory safeguards to ensure fair removal hearings—the right to a reasonable opportunity to examine the evidence, present evidence of one's own, and cross-examine the government's witnesses—require that a noncitizen be present during his or her removal proceedings?
- Does the Government violate [the plaintiff]'s right to counsel under the INA when it prevents him from returning to the United States, thereby allegedly impeding his ability to effectively communicate with his attorney and meaningfully participate in his removal proceedings?
- Is the Government's refusal to facilitate [the plaintiff]'s return for his removal proceedings under ICE Directive 11061.1 arbitrary and capricious in violation of the APA?
- Does due process in removal proceedings include the right to be present at one's own removal proceedings? Is there a due process violation where an individual is abroad and prevented from being physically present during removal proceedings such that he is substantially hindered in his ability to testify, present witnesses and evidence, consult with his attorneys, and cross-examine the government's witnesses and evidence?
- Under the Mandamus Act, does the Government have a ministerial, nondiscretionary obligation to allow [the plaintiff] to participate in person in his removal proceedings and access his counsel?

Id. at *5–6 (emphasis omitted). The court ultimately concluded that because the plaintiff's claims were "inextricably linked" to the pending removal proceedings, they must be "raised in a petition for review, not in this Court at this time." Id. at *6. In so finding, the court rejected the plaintiff's arguments that "because his motion to reopen was granted, he is entitled to be placed

14

back in the same status he had previously: physically present in the United States." Id. Because of the reopening, he was back in removal proceedings and, therefore, the legal questions raised in his complaint arose out of his removal proceedings and were subject to the INA's jurisdiction channeling. Id. The court also addressed the Supreme Court's ruling in Jennings, finding that there was nothing inconsistent between its decision and Jennings because the plaintiff was challenging "part of the process by which [his] removability will be determined," which Justice Alito had categorized as the sort of challenge district courts lack the jurisdiction to adjudicate. Id. at *7; see Jennings, 138 S. Ct. at 841 (plurality opinion).

Conteh contends that his case is distinguishable from Anaya Murcia because the plaintiff in Anaya Murcia, unlike Conteh, did not contest the lawfulness of his removal. See [ECF No. 20 at 2]. Conteh's attempt to distinguish Anaya Murcia is unpersuasive. First, Conteh's argument that his removal was unlawful rests on the contention that his removal was based on his Virginia conviction for a marijuana-related offense. Conteh asserts, however, that (1) removal proceedings were initiated in February 2009, [Compl. ¶ 12], (2) he was ordered removed in November 2009, [id. ¶ 16], and (3) when he was ordered removed, his Virginia case was "then-pending," [id. ¶ 15]. Based on these facts, his removal could not have been based on his Virginia conviction because, when he was ordered removed, that conviction had not yet occurred. Second, even assuming Conteh's removal was unlawful, that fact has no meaningful bearing on whether this Court has subject matter jurisdiction. Regardless of whether Conteh's removal was lawful, he is asking the Court to consider legal questions that are clearly linked to his pending reopened removal proceeding, the most important of which is: if a person who has been (un)lawfully removed prevails on a motion to reopen, is he or she entitled to be returned to the United States to participate in the reopened removal proceedings? The Court finds the

15

court's holding in Anaya Murcia well-reasoned and its analysis thorough and sees no reason to reach a different result here.[4] Unfortunately for Conteh, given the jurisdiction-channeling framework set forth in the INA, this Court lacks jurisdiction over his claims.

Finally, neither 28 U.S.C. § 1361 nor the APA provides the jurisdictional hook that Conteh needs to survive Defendants' motion. First, "[m]andamus is regarded as an extraordinary writ reserved for special situations." In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006). "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984) (first citing Kerr v. United States District Court, 426 U.S. 394, 402–03 (1976); then citing United States ex rel. Girard Tr. Co. v. Helvering, 301 U.S. 540, 543–44 (1937)). Here, Conteh has not exhausted all other avenues of relief. Second, the APA does not apply if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). On the facts of this case, for the reasons outlined above, § 1252(b)(9) precludes judicial review.

Thus, because the Court lacks subject matter jurisdiction, Conteh's complaint must be dismissed. Arbaugh, 546 U.S. at 514.

---

[4] The only other case the Court has been able to locate where a similarly-situated plaintiff sought similar relief is Ezenabo v. Customs and Border Prot., No. 18-cv-13584, 2019 WL 2122951 (E.D. Mich. May 15, 2019). In that case, the court did not reach the government's argument regarding a lack of subject matter jurisdiction because it concluded that the plaintiff had failed to "identify any statutory authority imposing a clear duty on Defendants to facilitate his return to the United States" and, therefore, had failed to state a claim. Id. at *2. Conteh has pointed to no case where a court considered the issue of subject matter jurisdiction and decided that it had jurisdiction to adjudicate an alien's claim that he or she was entitled to be returned to the United States for reopened removal proceedings.

### B.     Conteh's Motion to Strike

In support of their motion to dismiss, [ECF No. 13], Defendants filed a memorandum of law, [ECF No. 14], as well as a declaration from Immaculata Guarna-Armstrong, an Assistant Field Office Director for ICE, [ECF No. 14-1].  Both the memorandum and the declaration assert facts regarding Conteh's criminal history and immigration history.  See generally [ECF Nos. 14, 14-1].  Conteh has moved to strike "[a]ll references to his criminal record or any criminal or scandalous act" other than references to his Virginia marijuana conviction, [ECF No. 18 at 1], arguing that they are irrelevant to the issues at bar, [ECF No. 19 at 1].  Defendants oppose Conteh's motion, contending that his criminal history is relevant insofar as it sheds light on, among other things, how ICE identified him, why removal proceedings were initiated, and why he was ordered removed.  [ECF No. 23 at 3].

Because the Court lacks jurisdiction over the case, it cannot rule on Conteh's motion.[5]

## IV.     CONCLUSION

Accordingly, for the reasons stated above, Defendant's motion to dismiss, [ECF No. 13], is GRANTED and Conteh's motion to strike, [ECF No. 18], is DENIED as moot.  Conteh's complaint is DISMISSED without prejudice.

**SO ORDERED.**

October 29, 2020                                                                       /s/ Allison D. Burroughs
                                                                                                ALLISON D. BURROUGHS
                                                                                                U.S. DISTRICT JUDGE

---

[5] In any case, in reaching its conclusion regarding its lack of subject matter jurisdiction, the Court did not rely on any of the statements Conteh moved to strike.